# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FIRST NATIONAL BANCORP
INCORPORATED; FIRST NATIONAL
BANK OF SANTA FE; and FIRST SANTA
FE ADVISORS, LLC,

      Plaintiffs,

      v.                            No. _____

KRISTINA ALLEY, individually;
DAVID KANTOR, individually;
DAVID MARION, individually;
SANTA FE ADVISORS LLC; and DOES
1 THROUGH 50, inclusive,

      Defendants.

## VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT

COME NOW Plaintiffs First National Bancorp Incorporated ("Bancorp"), First National

Bank of Santa Fe ("FNBSF") and First Santa Fe Advisors, LLC ("FSFA") (collectively,

"Plaintiffs"), by and through their attorneys of record, Brownstein Hyatt Farber Schreck, LLP,

and hereby file their Verified Complaint for Unfair Competition under 15 U.S.C. § 1125(a),

Common Law Trademark Infringement, Misappropriation of Trade Secrets under the New

Mexico Uniform Trade Secrets Act (NMSA 1978 §§ 57-3A-1 to 7 (1989)), Unfair Trade

Practices (NMSA 1978 § 57-12-1, *et seq.*), Breach of Contract, Breach of the Covenant of Good

Faith and Fair Dealing, Breach of Fiduciary Duty, Breach of Duty of Loyalty and Unjust

Enrichment, and in support of same state as follows:

## NATURE OF ACTION

1.      Plaintiffs bring this suit in response to a series of unlawful actions that have been

and continue to be undertaken by former high-level executives and the competing entity, Santa

Fe Advisors LLC ("SFA"), they apparently formed during their employment with Plaintiffs.

Defendants Kristina Alley ("Alley"), David Kantor ("Kantor") and David Marion ("Marion")

(collectively, the "Former Executives") were employed in high-level management capacities

with Plaintiffs.

2.      On Friday, April 18, 2014, the Former Executives notified First National Bank of

Santa Fe via email of their resignations, effective immediately.  By Monday, April 21, 2014, the

Former Executives had what appears to be a fully-functioning competing entity operating under

the remarkably similar name "Santa Fe Advisors LLC," which they apparently had registered

with the New Mexico Secretary of State months earlier, in October 2013.  Indeed, the Form

ADV filed by Defendants in connection with SFA's registration indicates that SFA was

"*founded in March of 2014*," while the Former Executives still were employed with Plaintiffs.

The Form ADV further indicates that SFA "is a limited liability company principally owned by"

the Former Executives.  The Form ADV filed by SFA details its philosophy, investment strategy,

research process, portfolio construction, and fee schedule, describing them in *identical* language

as FSFA.  SFA already has a robust and apparently fully-functional website that bears strong

similarities to FSFA's website; *the domain name for which was purchased on October 15,*

*2013*;  given the complexity of the website, it simply could not have been prepared over a single

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**
**Page 2 of 46**

weekend and must have been in progress while the Former Executives still were employed with Plaintiffs.

3.        Prior to or concurrently with their departure from FSFA, the Former Executives successfully solicited two of FSFA's employees to resign their employment and commence working for SFA.  By Monday, April 21, 2014, the Former Executives had already successfully solicited a significant number of FSFA's current customers, in large part by making statements to the effect that FSFA was being shut down and creating confusion on the part of FSFA's clients.  FSFA attempted to postpone a client meeting it had scheduled for Monday, April 21, 2014 due to the abrupt departures; however, ***the Former Executives attended this FSFA customer meeting in their capacity as agents of SFA***.  In the following days, SFA and the Former Executives have continued to solicit FSFA's customers and, through a series of press releases and other conduct, have created confusion as to the relationship between the Former Executives, SFA and FSFA.

4.        Based on the immediate and irreparable impact Defendants' conduct has had and continues to have on Plaintiffs, Plaintiffs instituted this action seeking, among other things, immediate injunctive relief.  This action alleges claims for unfair competition under the Lanham Act (15 U.S.C. § 1125(a)), common law trademark infringement, misappropriation of trade secrets under the New Mexico Uniform Trade Secrets Act (NMSA 1978 §§ 57-3A-1 to 7), violation of the New Mexico Unfair Trade Practices Act (NMSA 1978 § 57-12-1, *et seq*.), breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, breach of the duty of loyalty and unjust enrichment.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 3 of 46**

5.      By this action, Plaintiffs seek, among other things, a temporary restraining order and injunction against Defendants preventing them from (i) continuing to use the trademark or the trade name "Santa Fe Advisors LLC," (ii) engaging in false and deceptive trade practices, and (iii) engaging in the misuse of Plaintiffs' confidential, proprietary and trade secret information.  Plaintiffs also seek an order requiring Defendants to return all confidential, proprietary and trade secret information to Plaintiffs.  In addition, Plaintiffs seek liquidated, compensatory and punitive damages as a result of the harm caused by Defendants' unlawful acts.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff FSFA is a New Mexico limited liability company in good standing, with its principal place of business located at 62 Lincoln Avenue, Santa Fe, New Mexico 87501.

7.      FSFA is a wholly owned subsidiary of Plaintiff Bancorp, New Mexico corporation in good standing, with its principal place of business located at 2101 Mountain Road, Suite B, Albuquerque, NM 87104.  Bancorp is the sole, and managing, member of FSFA.

8.      Plaintiff FNBSF is a New Mexico corporation in good standing, with its principal place of business located at 2101 Mountain Road, Suite B, Albuquerque, NM 87104 and 62 Lincoln Avenue, Santa Fe, NM 87501.  FNBSF is an affiliate of FSFA, and is a wholly owned subsidiary of Bancorp.

9.      Upon information and belief, Defendant SFA is a New Mexico limited liability company with its principal place of business located at 208 Delgado Street, Suite 1, Santa Fe, New Mexico 87501 and 62 Lincoln Avenue, Santa Fe, NM 87501.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 4 of 46**

10.     Upon information and belief, Defendants Alley, Kantor and Marion are individuals who are residents of the State of New Mexico.

11.     The true names and capacities, whether individual, corporate, associate or otherwise, herein named as Does 1 through 50, inclusive are unknown to Plaintiffs at this time. Plaintiffs will seek leave to amend their complaint at such time as they become aware of the true names and capacities of Does 1 through 50, inclusive.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries and damages as herein alleged were proximately caused by those defendants.  Each reference in this complaint to "Defendant," "Defendants," or a specifically-named defendant, also refers to all defendants sued under fictitious names.

12.     This Court has jurisdiction over this Complaint and the matters addressed herein pursuant to 28 U.S.C. § 1338 in that the First Claim for Relief arises under the Trademark Act of 1946, 15 U.S.C. §§ 1051-1127, as amended.

13.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a) because the claims arise from the same common nucleus of operative facts complained of in the First Count.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) because the parties reside in the State of New Mexico and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the State of New Mexico.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 5 of 46**

## GENERAL FACTUAL BACKGROUND AND ALLEGATIONS

### *Defendant Alley's Employment Relationship*

15.     Defendant Alley became employed with FNBSF in 2008, in the position of Senior

Vice President and Senior Investment Officer.  Upon commencing her employment, Alley

received accepted a generous compensation package, including an initial base salary of $135,000

annually, plus bonus opportunities, and a comprehensive benefits package.

16.     In July 2012, Defendant Alley's payroll was formally transitioned to FSFA, for

which she served in the position of Managing Director, which role she held until she abruptly

resigned effective April 18, 2014.  Alley received significant bonuses during her employment

tenure with Plaintiffs.

17.     Defendant Alley represents that she is the holder of a Certified Financial Planner

certification.  As such, she is subject to the CFP Board's Code of Ethics and Professional

Responsibility, Rules of Conduct, and Financial Planning Practice Standards.  According to the

CFP Board, by becoming a Certified Financial Planner, Defendant Alley was required to agree to

be bound by these rules and standards, which "demonstrates to the public that [the individual

has] agreed to provide personal financial planning in the client's best interest and to act in

accordance with the highest ethical and professional standards for the practice of financial

planning."

18.     As consideration for commencing her employment, Alley (as the "Staff") and

Plaintiffs (as the "Company") entered into a Confidentiality Agreement (the "Confidentiality

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 6 of 46**

Agreement"). In that agreement, Alley agreed, among other things, not to reveal any "Confidential Information" (as defined therein) and not to "directly or indirectly, copy, take, or remove" from the premises "any of the Company's policies and procedures, books, records, customer lists, email files, electronically stored documents, or any other documents or materials unless management approves such dissemination." The Confidentiality Agreement defines "Confidential Information" as:

> customer account activity, account balances and any other non-public financial information, Company policies and procedures, records, lists, knowledge of the Company's customers, suppliers, methods of operation, processes, trade secrets, methods of determination of prices, financial condition… marketing strategies… computer files… and any other material that a prudent person might consider confidential.

### *Defendant Kantor's Employment Relationship*

19.     Defendant Kantor commenced his employment with FNBSF in late 2010, in the position of Senior Vice President Investment & Trust Services Department. Upon commencing his employment, Kantor also accepted a generous compensation package, including an initial base salary of $112,500 annually, plus incentive compensation, and a comprehensive benefits package. Kantor received significant bonuses during his employment tenure with Plaintiffs.

20.     In July 2012, Defendant Kantor's payroll was formally transitioned to FSFA, for which he served in the position of Managing Director, which role he held until he abruptly resigned effective April 18, 2014.

21.     As consideration for commencing his employment, Kantor (as the "Employee") and FNBSF entered into a Confidentiality Agreement (the "Confidentiality Agreement") and a

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**
**Page 7 of 46**

separate Non-Competition Agreement (the "Non-Competition Agreement") that remained

effective throughout his employment with Plaintiffs.  Among other things, by executing the

Confidentiality Agreement and the Non-Competition Agreement, Kantor agreed not to disclose

or use Plaintiffs' confidential information and other trade secrets.  For instance, Section 2(b) of

the Non-Competition Agreement states:

> During the term of employment with FNBSF and ***forever following the
> termination thereof for any reason, Employee shall not make any use
> for his/her own benefit or for the benefit of a business or entity other
> than FNBSF, of any secret or confidential information, customer lists or
> any other data*** of or pertaining to FNBSF, its business and financial
> affairs or its services not generally known within FNBSF trade and which
> was acquired by him/her during his/her affiliation with FNBSF.  In
> addition, ***Employee further agrees not to copy for his/her own use any
> confidential information and further agrees not to remove such
> information from FNBSF place of business*** or to e-mail such information
> without prior written consent from FNBSF.

(Emphasis added.)

     22.    Kantor further agreed to a non-solicitation clause in the Non-Competition

Agreement.  Section 2(c) states:

> During the term of Employee's employment… and following the
> termination of Employee's employment… ***for a period of twenty-four
> (24) full calendar months after the termination, Employee shall not (i)
> solicit, contract, interfere with, re-write or divert any existing or
> prospective customer served or solicited by FNBSF during the period of
> the Employee's employment*** hereunder with the sole exception of
> Employee's own investment accounts and those of Employee's immediate
> family; or (ii) ***solicit any person then or previously employed by FNBSF
> to join Employee, whether as a partner, agent, employee or otherwise, in
> any enterprise engaged in a business similar to the business of FNBSF
> being conducted at the time of such termination.***

(Emphasis added.)

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 8 of 46**

23.     Kantor further agreed to a non-competition clause.  Section 2(a) of the Non-Competition Agreement states:

> Employee agrees that… *for a period of one (1) year immediately following the Employee's termination of employment… Employee shall not… engage in or in any manner be connected or concerned, directly or indirectly,* whether as an officer, director, stockholder, partner, owner, employee, creditor or otherwise, with the operation, management or conduct of *any business that competes with FNBSF* including, but not limited to, any business involving commercial lending, trust and estate planning, private banking, investment management and insurance services *and which conducts its business within a one hundred mile radius of any FNBSF office*.

(Emphasis added.)

24.     The Non-Competition Agreement expressly states that it "shall be binding upon and inure to the benefit of the parties hereto and their respective affiliates, successors, assigns, heirs and personal representatives."  As affiliates of FNBSF, the Non-Competition Agreement is equally applicable to FSFA and Bancorp.

25.     The Non-Competition Agreement provides for liquidated damages in the event of Kantor's solicitation of Plaintiffs' employees.  Specifically, Section 2(d) states that if,

> at any time during employment or within twenty-four (24) full calendar months after the termination thereof, Employee or any firm or other entity with which Employee is affiliated in any way, shall employ or otherwise associate with any employee of FNBSF… Employee shall be presumed to have violated this Section 2 and shall pay FNBSF an amount equal to the total Form W-2 compensation paid by FNBSF to such former employee during the twelve (12) calendar months ending the month in which such former employee terminated his/her employment with FNBSF.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 9 of 46**

26.     The Non-Competition Agreement also provides for liquidated damages in the

event of Kantor's solicitation of FNBSF's customers.  Section 2(e) states:

> Employee agrees that, with respect to each existing or prospective customer or
> client of FNBSF that within twenty-four (24) full calendar months after
> termination of Employee's employment with FNBSF, if employee transfers all or
> any portion of such customer or client's business from FNBSF to Employee or
> any firm or other entity with which Employee is affiliated in any way, Employee
> shall be presumed to have violated this Section 2 and shall pay FNBSF: (i) an
> amount equal to one hundred percent (100%) of the gross incentive paid to the
> employee with respect to such customer's business during the twelve (12) months
> period ending on the last date the employee was employed by FNBSF; and (ii) in
> the case of a FNBSF customer or client that transfers a portion of its business
> from FNBSF to Employee, an amount equal to one hundred percent (100%) of the
> gross fees earned with respect to such customer's business transferred to
> Employee during the twelve (12) months period ending on the last date the
> employee was employed by FNBSF, and (iii) in the case of each prospective
> FNBSF customer or client solicited by Employee while employed with FNBSF
> that within twenty-four (24) months after Employee's termination does business
> with Employee, an amount equal to one hundred percent (100%) of the estimated
> gross fees FNBSF reasonably projected it would do with such prospective
> customer during the twelve (12) months period after the termination of
> Employee's employment with FNBSF.

### Defendant Marion's Employment Relationship

27.     Defendant Marion commenced his employment with FNBSF in or about June

2011 in the position of Managing Director, Wealth Management Group.  Upon commencing his

employment, Marion also accepted a compensation package that included an initial base salary

of $80,000 annually, plus incentive compensation, and a comprehensive benefits package.

28.     In July 2012, Defendant Marion's payroll was formally transitioned to FSFA, for

which he served in the role of Managing Director, which role he held until he abruptly resigned

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 10 of 46**

effective April 18, 2014.  Marion received significant bonuses during his employment tenure with Plaintiffs.

29.     Defendant Marion holds himself out as a Chartered Financial Analyst® Charterholder through the CFA Institute.  As such, he is subject to the CFA Institute's Code of Ethics and Standards of Professional Conduct, which, among other things, prohibit unethical behavior.

30.     As consideration for commencing his employment, Marion (as "Staff") and Plaintiffs (as the "Company") entered into a Confidentiality Agreement (the "Confidentiality Agreement").  In that agreement, Marion agreed, among other things, not to reveal any "Confidential Information" (as defined therein) and not to "directly or indirectly, copy, take, or remove" from the premises "any of the Company's policies and procedures, books, records, customer lists, email files, electronically stored documents, or any other documents or materials unless management approves such dissemination."  The Confidentiality Agreement defines "Confidential Information" as:

> customer account activity, account balances and any other non-public financial information, Company policies and procedures, records, lists, knowledge of the Company's customers, suppliers, methods of operation, processes, trade secrets, methods of determination of prices, financial condition… marketing strategies… computer files… and any other material that a prudent person might consider confidential.

### Defendants' Access to Plaintiffs' Confidential Information

31.     In addition to the foregoing agreements, the Former Executives agreed to comply with Plaintiffs' policies and procedures, which prohibit improper use or disclosure of Plaintiffs' confidential and/or proprietary information.

32.     During the course of their employment with Plaintiffs, particularly including their time serving as Managing Directors of FSFA, the Former Executives had access to and the opportunity to gain intimate knowledge of Plaintiffs' confidential, proprietary and trade secret information, including, but not limited to:  FSFA's customer lists (including non-publicly available contact information, amount of assets, risk profile, information regarding service preferences, and data regarding the services and products customers were more likely to purchase), Plaintiffs' business and marketing strategies, business and client services, financial information, vendor information, pricing structures, and other proprietary information.

33.     Plaintiffs at all times made reasonable and diligent efforts to keep their trade secret information private and confidential.

### The Former Executives' Formation of SFA and Abrupt Departure from FSFA

34.     In or about January 2014, after being unsuccessful at managing FSFA profitably for a long period of time, the Former Executives approached Plaintiffs with an offer to purchase FSFA for a fraction of the purchase price paid for the company by Bancorp's parent company. Plaintiffs declined their offer.

35.     Between May 2012 and October 2013, , the Former Executives had experienced only three discrete one-month periods where they had brought in no new clients (September

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 12 of 46**

2012, December 2012 and March 2013).  In the nearly six-month period from November 5, 2013 to their departure, though , they brought in only one new client.

36.     In around the same time frame as the Former Executives' new clients trickled to virtually nothing, on October 21, 2013, SFA was registered as a domestic limited liability company with the New Mexico Office of the Secretary of State, according to New Mexico Secretary of State records.  The organizer is identified as Michael Hampton, Kantor's significant other.  Similarly, on October 15, 2013, the domain name "santafeadvisorsllc.com" was registered by Hampton on behalf of Defendants.  Notably, the Form ADV filed by the Former Executives with respect to SFA indicates that SFA, a direct competitor of FSFA, was founded in March 2014, while the Former Executives still were employed with Plaintiffs.

37.     Upon information and belief, from October 2013 forward, the Former Executives actively began preparing to compete with Plaintiffs by, among other things, registering or causing SFA to become registered with the New Mexico Office of the Secretary of State; on behalf of SFA, duplicating virtually verbatim FSFA's documentation for registration as an Advisor with the United States Securities and Exchange Commission ("SEC") and preparing to register SFA as an Advisor; using Plaintiffs' proven proprietary methods, developing for SFA business and marketing strategies; securing a domain name for SFA and designing and preparing to launch a comprehensive SFA website similar to that of FSFA; compiling customer and prospective customer information from Plaintiffs to utilize in launching SFA; transferring their loyalty to SFA, including by their failure to effectively market FSFA and/or their usurpation of FSFA's opportunities for the benefit of SFA; and otherwise actively preparing to operate SFA as

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 13 of 46**

a competing business.  During virtually all of this time period, the Former Executives remained

employed with Plaintiffs, received their full compensation, including incentive compensation for

2013, were expected to act as loyal employees and devote their full time and working efforts to

Plaintiffs, and owed Plaintiffs fiduciary duties by virtue of their roles as high-level executives of

Plaintiffs and Managing Directors of FSFA.  Throughout this time period, the Former Executives

had full access to all of FSFA's confidential, proprietary information and trade secrets, as well as

certain of FNBSF's confidential, proprietary information and trade secrets.  Plaintiffs are

informed and believe that the Former Executives duplicated, misappropriated, used and relied

upon this information in preparing to compete with FSFA.

   38. On April 18, 2014, the Former Executives notified Plaintiffs via e-mail of their

resignation, effective immediately.

   39. The very next morning, on April 21, 2014, the Former Executives publicly

announced the opening of SFA.  Plaintiffs are informed and believe based upon, among other

things, the almost immediate transition of numerous FSFA clients to SFA, that the Former

Executives had already begun soliciting Plaintiffs' customers prior to the termination of their

employment.

   40. The same day as the Former Executives resigned, the Operations Manager and

one of the Investment Analysts of FSFA also abruptly resigned and joined SFA as well.

Plaintiffs are informed and believe based upon, among other things, the timing of the hires by

SFA, that the Former Executives had begun soliciting Plaintiffs' employees while still serving as

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**
**Page 14 of 46**

Managing Directors of FSFA.  Plaintiffs also are informed and believe that one or more of the

Former Executives improperly solicited the other(s) while still employed with Plaintiffs.

41.    Plaintiffs have received information that the Former Executives advised numerous

FSFA clients that FSFA was "exiting the business" and that Plaintiffs were "shutting FSFA

down."  These false statements caused confusion on the part of FSFA customers and led to

numerous FSFA clients transitioning their business to SFA, as intended by Defendants.

42.    On April 23, 2014, Plaintiffs, through counsel, formally requested Defendants to

cease and desist engaging in conduct that is in breach of their obligations under the law and

pursuant to the Non-Competition Agreement and Confidentiality Agreement.

43.    As of the date of this Complaint, Defendants, through counsel, have declined to

cease the majority of behavior Plaintiffs contend is unlawful, and Defendants continue to engage

in unlawful conduct.

### Plaintiffs' Trademark

44.    Plaintiffs have been using the distinctive FIRST SANTA FE ADVISORS

trademark and/or ADVISORS trademark in connection with the financial services provided by

FSFA since 2011 (the "FSFA Marks").  Plaintiffs own all right, title and interest in and to the

FSFA Marks for use with financial services.  Plaintiffs have engaged in extensive and continuous

use of the FSFA Marks.

45.    Plaintiffs have for years marketed and distributed materials related to Plaintiffs'

services bearing the FSFA Marks via print and electronic materials, and other mediums,

including its Internet site located at www.firstsantafeadvisors.com.  Through these efforts,

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 15 of 46**

Plaintiffs have developed significant goodwill in the FSFA Marks, as the FSFA Marks have become widely known, particularly throughout the region, as being a trustworthy, professional, and successful financial services company.

46.    Prior to their abrupt resignations, the Former Executives acted as "public faces" of Plaintiffs, and particularly FSFA, in their role as Managing Directors.  Their photographs were prominently displayed on the FSFA website, and their names were essentially intertwined with Plaintiffs' (and particularly FSFA's) business.

### Defendants' Unlawful Use of the SANTA FE ADVISORS Trademark

47.    Based upon its press releases, website and Form ADV Part 2A filing, Defendant SFA offers similar, if not identical, financial services to FSFA.  In the brief period of SFA's existence, such services have been marketed through SFA's website, in-person meetings held by the Former Executives, telephone calls, press releases, and other materials.

48.    In an attempt to grow its business and solicit Plaintiffs' current and potential customers, SFA has distributed, and continues to distribute, marketing materials bearing the mark SANTA FE ADVISORS and/or ADVISORS (the "Infringing Marks") to Plaintiffs' current, former, and prospective customers.

49.    Many of the marketing materials containing the Infringing Marks also have photographs of or references to one or more of the Former Executives.

50.    SFA's use of the Infringing Marks is highly likely to cause confusion and mistake, and highly likely to deceive and mislead the public to believe that SFA is somehow affiliated with or authorized or endorsed by Plaintiffs and their services.  This is particularly the

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 16 of 46**

case when the Infringing Marks are used in connection with the names and faces of one or more of the Former Executives who, less than one week ago, were affiliated with Plaintiffs.

51.     Moreover, Plaintiffs are informed and believe that SFA's use of the Infringing Marks has caused actual confusion and mistake in the marketplace.

52.     SFA's use of the Infringing Marks appears to be deliberate and intentional, and expressly designed to create confusion and mistake and to deceive and mislead the public to believe SFA's services are of the same nature, quality or standards of FSFA's services.

53.     SFA's use of the Infringing Marks is without Plaintiffs' license, authorization or permission.

54.     Upon information and belief, the Former Executives participated in, authorized, approved, ratified and directed the use of the Infringing Marks in SFA's name.  Such conduct was an intentional effort to create confusion and unlawfully compete with Plaintiffs.  As a result of their personal involvement in such activities, the Former Executives are jointly and severally liable for the actions of SFA addressed herein.

55.     As former executives of Plaintiffs and Managing Directors of FSFA, the Former Executives are intimately familiar with Plaintiffs', and particularly FSFA's, services and reputation in the community.  Defendants' deliberate and continued use of the Infringing Marks, particularly in the face of Plaintiffs' cease-and-desist demands, demonstrates a willful and knowing intent, and further demonstrates a pattern of unfair competition by Defendants.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 17 of 46**

56.     Defendants' acts complained of herein have damaged Plaintiffs and, unless restrained, will continue to damage Plaintiffs, the value of the FSFA Marks, and the goodwill associated therewith.

### Defendants' Solicitation of Plaintiffs' Customers and Employees, Theft and Misuse of Trade Secrets and Deceptive Trade Practices

57.     To succeed in the industry, Plaintiffs maintain confidential and proprietary information and trade secrets, including but not limited to: lists of customers and prospective customers, non-publicly available contact information and customer-related data, risk profiles, service and product preferences (together, all such information related to customers is the "Customer Information"), unique business models and plans, outreach and business planning information, marketing strategies, proprietary documentation and processes, and other confidential information (collectively, the "Trade Secrets"). These Trade Secrets have been compiled at significant expense to Plaintiffs in order to provide Plaintiffs a competitive advantage in the marketplace.

58.     In the course of their employment, the Former Executives gained significant knowledge and information pertaining to the Trade Secrets. The Former Executives understood that they were required, and continue to be required, to keep the Trade Secrets confidential, refrain from disclosing those Trade Secrets to third parties, and refrain from using such information for the benefit of any entity other than Plaintiffs, particularly competitive business entities.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 18 of 46**

59.     The Former Executives also understood that they had, and continue to have, an independent legal obligation to safeguard Plaintiffs' Trade Secrets and to protect the confidentiality of Plaintiffs' Customer Information.

60.     Plaintiffs are informed and believe that the Former Executives copied, retained, and used Plaintiffs' Trade Secrets in forming and operating SFA.  In addition, the Former Executives utilized information compiled at great expense by Plaintiffs in order to give their new competing entity an unfair advantage in the marketplace.

61.     For instance, Reviewing Part 2A of Form ADV filed with the SEC by SFA demonstrates that SFA copied virtually verbatim FSFA's prior-filed version of the same document.  Plaintiffs went to great expense and expended significant time in preparing that document, which the Former Executives then misappropriated for the benefit of SFA.

62.     The Former Executives have breached their obligations to Plaintiffs, including but not limited to their contractual obligations as set forth above.

63.     Moreover, Plaintiffs are informed and believe that the Former Executives violated obligations imposed upon them by their respective professional certifications.  Additionally, as advisors who are registered with the Securities and Exchange Commission, the Former Executives were required to comply with Regulation S-P, which they may have violated in the course of their theft of Plaintiffs' Trade Secrets.

64.     In less than one week, numerous of FSFA's existing customers have transitioned their accounts to SFA.  These requests typically are made through virtually identical self-serving form letters that appear to have been created by or on behalf of the Former Executives and

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 19 of 46**

provided to FSFA's existing customers as part of a wide-scale customer solicitation scheme by Defendants.  Plaintiffs have received information that many of these customers are transitioning their accounts based on affirmative serious misrepresentations by Defendants to the effect that, among other things, FSFA is going out of business.

65.     Defendants have used Plaintiffs' Trade Secrets to solicit FSFA's existing and potential customers.  For example, immediately after resigning, on April 21, 2014, the Former Executives attended an FSFA customer meeting that FSFA had arranged prior to the Former Executives' departure.  The Former Executives attended this meeting, which they learned of through their roles as Managing Directors of FSFA and likely had scheduled on behalf of FSFA, as representatives of SFA.

66.     Not only did the Former Executives' attendance at this pre-arranged FSFA meeting result from usage of Plaintiffs' Trade Secrets, but Plaintiffs are informed and believe that the Former Executives' attendance at the meeting was designed to confuse and deceive the FSFA customer into taking the meeting with the Former Executives and with respect to the customer's impression of which entity the Former Executives were representing at the meeting.

67.     SFA's website contains false and misleading statements and/or is further intended to confuse and deceive FSFA customers.  For instance, until yesterday, SFA's website stated that SFA hosts current and prospective clients at their daily market strategy meetings on alternate Fridays, and that these meetings "***have been extremely popular, and help clients and friends gain a great deal of insight into how we manage investments risks***."  (See Santa Fe Advisors, LLC website screenshot, attached hereto as **Exhibit 1**.)  Given that SFA's business became

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 20 of 46**

operational on April 21, 2014, this statement is axiomatically false and misleading. Alternatively, Defendants are attempting to market SFA based upon work performed for FSFA while failing to disclose that fact to the public. By claiming that SFA "regularly hosts" such meetings, when in fact such meetings have never before been held by SFA, SFA made false and misleading statements in connection with the sale of its services. Plaintiffs are informed and believe that Defendants have since removed this specific language, but other misleading information remains on the website.

68. In fact, these alternate-Friday meetings were a successful marketing and client service strategy researched and implemented by Plaintiffs, and Defendants' misappropriation of this proprietary strategy constitutes further improper conduct with respect to Plaintiffs' Trade Secrets.

69. Defendants and each of them either knew or should have known, and participated in, and financially benefited from, the theft and misuse of the Trade Secrets and the false and misleading statements made to Plaintiffs' existing and potential customers and the other wrongful conduct alleged herein.

70. Plaintiffs advised Defendants and each of them of their wrongful conduct and requested that they refrain from continuing to engage in such conduct. Plaintiffs are informed and believe that Defendants and each of them continue to engage in the wrongful conduct described herein, and did not in any apparent manner alter their conduct, nor do they intend to do so.

## COUNT I
## Federal Unfair Competition – 15 U.S.C. § 1125(a)
### (Against all Defendants)

71.      Plaintiffs hereby incorporate and re-allege Paragraphs 1 through 70 above as if fully set forth below.

72.      Defendants' use of the Infringing Marks to promote, market or sell the services they offer is likely to cause confusion, mistake and deception among customers as to the identity and source of SFA's services, and did, in fact, cause such confusion.  Defendants' actions create, cause and/or contribute to a false association between FSFA and SFA, and Defendants have unfairly exploited Plaintiffs' goodwill and reputation and continue to do so.  Defendants' actions constitute unfair competition, false designation of origin and passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.      As a proximate result of Defendants' actions, Plaintiffs have suffered and will continue to suffer great damage.  Defendants' actions have caused and will continue to cause irreparable harm to Plaintiffs for which there is no adequate remedy at law.

74.      The foregoing acts of infringement have been and continue to be knowing, deliberate, willful and wanton, and in utter disregard for Plaintiffs' rights, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

75.      Plaintiffs are entitled to immediate injunctive relief to prevent Defendants from continuing this practice, as well as other remedies available under the Lanham Act, including but not limited to compensatory damages, treble damages, disgorgement of profits, and attorneys' fees and costs.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 22 of 46**

WHEREFORE, based on Defendants' violation of the Lanham Act, Plaintiffs respectfully request that they be awarded the following relief against Defendants, jointly and severally:

(a)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them:

(i) From using, in connection with electronic media, websites, marketing, promoting, or otherwise offering financial services, the Infringing Marks, or any derivative thereof, including the domain address of www.santafeadvisorsllc.com, and any other trademark, name, designation, design or trade dress that, either alone or in combination, is likely to cause confusion, mistake or deceptions as to source, origin, sponsorship, endorsement, affiliation or the genuine nature of the products or services;

(ii) From using any false designation of origin, false description or false representation, and from making any false representations or from engaging in any act or acts that, either alone or in combination, constitute deceptive or unfair competition by Defendants with Plaintiffs; and

(iii) From engaging in any other act intended or likely to cause confusion or mistake in the minds of the trade or the public or to deceive consumers into mistakenly believing that Defendants' services are FSFA's services, or that Defendants' services are related to, affiliated with, sponsored by, or approved by Plaintiffs or are from the same sources as FSFA's services, or to otherwise misrepresent the nature, characteristics, qualities or origins of Defendants' services;

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 23 of 46**

(b)     That Defendants be required to supply Plaintiffs with a complete list of all entities and persons who, to Defendants' knowledge, received any marketing, advertising or promotional materials from Defendants, which marketing materials use the Infringing Marks, or any part thereof, or that make reference to the Former Executives in their capacity as financial services providers;

(c)     That Defendants be required to return all of Plaintiffs' property and information, (including all documents and copies, summaries and compilations thereof) including all Trade Secrets and Customer Information, and permanently delete and remove all of Plaintiffs' information from their computers, personal electronic devices, personal accounts (including email accounts), and storage media, including but not limited to hard drives on personal computers, storage media, external hard drives, BlackBerries, SmartPhones, cell phones, voicemail and file storing accounts.

(d)     That Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs within thirty (30) days after service of the permanent injunction a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the permanent injunction.

(e)     That the Court enjoin Defendants from retaining, using, or disclosing to any person, directly or indirectly, in any form, any of Plaintiffs' Trade Secrets or other confidential information, expressly including Customer Information, and require Defendants to i) return all Trade Secrets, including all copies, summaries, and compilations thereof; and ii) certify that all information or data related to the Trade Secrets in Defendants' possession has been permanently

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 24 of 46**

deleted and removed from any and all electronic accounts, external devices, laptops, email accounts, data storage centers and the like in the possession, custody or control of Defendants or any of them;

      (f)     That an accounting be conducted and judgment entered against Defendants for:

      (1)     All profits received by Defendants as a result of their acts of unfair infringement/unfair competition;

      (2)     All damages sustained by Plaintiffs on account of, *inter alia*, Defendants' trademark infringement and unfair competition;

      (3)     Actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action;

      (4)     Treble damages pursuant to 15 U.S.C. § 1117;

      (g)     Monetary damages to be used for corrective advertising by Plaintiffs;

      (h)     Compensatory damages in an amount to be determined at trial;

      (i)     Reasonable attorneys' fees incurred in this action;

      (j)     Prejudgment interest;

      (k)     Post-judgment interest; and

      (l)     Such other and further relief as the Court deems just and proper.

**COUNT II**
**<u>Common Law Trademark Infringement</u>**
**(Against all Defendants)**

76.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 75, as if fully set forth below.

77.     The aforesaid acts of Defendants constitute trademark infringement in violation of Plaintiffs' rights under common law.

78.     Defendants' actions have caused and will continue to cause damage to Plaintiffs, and are causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

WHEREFORE, based on Defendants' unfair competition, Plaintiffs respectfully request that they be awarded the following relief against Defendants, jointly and severally:

(a)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them:

(i) From using, in connection with electronic media, websites, marketing, promoting, or otherwise offering financial services, the Infringing Marks or any derivative thereof, including the domain address of www.santafeadvisorsllc.com, and any other trademark, name, designation, design or trade dress that, either alone or in combination, is likely to cause confusion, mistake or deceptions as to source, origin, sponsorship, endorsement, affiliation or the genuine nature of the products or services;

(ii) From using any false designation of origin, false description or false representation, and from making any false representations or from engaging in any act or acts that, either alone or in combination, constitute deceptive or unfair competition by Defendants with Plaintiffs; and

(iii) From engaging in any other act intended or likely to cause confusion or mistake in the minds of the trade or the public or to deceive consumers into mistakenly

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 26 of 46**

believing that Defendants' services are FSFA's services, or that Defendants' services are related to, affiliated with, sponsored by, or approved by Plaintiffs or are from the same sources as FSFA's services, or to otherwise misrepresent the nature, characteristics, qualities or origins of Defendants' services;

(b)      That Defendants be required to supply Plaintiffs with a complete list of all entities and persons who, to Defendants' knowledge, received any marketing, advertising or promotional materials from Defendants, which marketing materials use the Infringing Marks or any part thereof, or that make reference to the Former Executives in their capacity as financial services providers;

(c)      That Defendants be required to return all of Plaintiffs' property and information, (including all documents and copies, summaries and compilations thereof) including all Trade Secrets and Customer Information, and permanently delete and remove all of Plaintiffs' information from their computers, personal electronic devices, personal accounts (including email accounts), and storage media, including but not limited to hard drives on personal computers, storage media, external hard drives, BlackBerries, SmartPhones, cell phones, voicemail and file storing accounts.

(d)      That the Court enjoin Defendants from retaining, using, or disclosing to any person, directly or indirectly, in any form, any of Plaintiffs' Trade Secrets or other confidential information, expressly including Customer Information and require Defendants to i) return all Trade Secrets, including all copies, summaries, and compilations thereof; and ii) certify that all information or data related to the Trade Secrets in Defendants' possession has been permanently

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 27 of 46**

deleted and removed from any and all electronic accounts, external devices, laptops, email

accounts, data storage centers and the like in the possession, custody or control of Defendants or

any of them;

(e)     That the Court enjoin Defendants from returning to or being on Plaintiffs'

premises and from intimidating Plaintiffs' employees;

(f)     That an accounting be conducted and judgment entered against Defendants for:

(1)     All profits received by Defendants as a result of their acts of unfair

infringement/unfair competition;

(2)     All damages sustained by Plaintiffs on account of, *inter alia*, Defendants'

trademark infringement and unfair competition;

(3)     Actual compensatory damages in an amount not presently known, but to

be computed during the pendency of this action;

(g)     Monetary damages to be used for corrective advertising by Plaintiffs;

(h)     Prejudgment interest;

(i)     Post-judgment interest; and

(j)     Such other and further relief as the Court deems just and proper.

## COUNT III
### Misappropriation of Trade Secrets Under the New Mexico Uniform Trade Secrets Act
**(Against all Defendants)**

79.     Plaintiffs reallege and incorporate by reference the allegations set forth above in

paragraphs 1 through 78, as if fully set forth below.

VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 28 of 46

80.     New Mexico has adopted the Uniform Trade Secrets Act (the "Act"), which

protects an employer from a former employee misappropriating trade secrets.

81.     Plaintiffs' Customer Information also constitutes Trade Secrets.  The Act defines

a "trade secret" as:

> information, including a formula, pattern, compilation, program, device,
> method, technique or process, that:
>
> (1) derives independent economic value, actual or potential, from not
> being generally known to and not being readily ascertainable by proper
> means by other persons who can obtain economic value from its
> disclosure or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to
> maintain its secrecy.

NMSA 1978 § 57-3A-2 (1989).

82.     Additionally, the Act defines "misappropriation" as:

> (1) acquisition of a trade secret of another by a person who knows or has
> reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure of use of a trade secret of another without express or
> implied consent by a person who:
>
> (a) used improper means to acquire knowledge of the trade secret; or
>
> (b) at the time of disclosure or use, knew or had reason to know that his
> knowledge of the trade secret was: 1) derived from or through a person
> who had utilized improper means to acquire it; 2) acquired under
> circumstances giving rise to a duty to maintain its secrecy or limit its use;
> or 3) derived from or through a person who owed a duty to the person
> seeking relief to maintain its secrecy or limit its use; or
>
> (c) before a material change of his position, knew or had reason to know
> that it was a trade secret and that knowledge of it had been acquired by
> accident or mistake;

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 29 of 46**

Id.

83.     Finally, the Act provides:

> Actual or threatened misappropriation may be enjoined.  Upon application
> to the court, an injunction shall be terminated when the trade secret has
> ceased to exist but the injunction may be continued for an additional
> reasonable period of time in order to eliminate commercial advantage that
> otherwise would be derived from the misappropriation… In appropriate
> circumstances, affirmative acts to protect a trade secret may be compelled
> by a court order.

NMSA 1978 § 57-3A-3 (1989).

84.     Defendants misappropriated (*i.e.*, acquired and disclosed through a breach of duty

to maintain secrecy) Plaintiffs' trade secrets as defined under the Act (*i.e.*, FSFA's Trade Secrets,

including Customer Information and business plans).  Specifically, by opening up a competing

business and relying upon and using Plaintiffs' Trade Secrets in connection with that business,

and in violation of Kantor's obligations under the Non-Competition Agreement, Defendants have

used, disclosed and misappropriated Plaintiffs' confidential and trade secret information.

85.     Additionally, upon information and belief, Defendants contacted and solicited

FSFA's customers using Plaintiffs' confidential Customer Information, including through

telephone calls, electronic communications, in-person meetings, and other means,

notwithstanding Defendants' obligations to keep such information confidential and to refrain

from using such information under the Act.

86.     Defendants' use of Plaintiffs' Trade Secrets has caused and continues to cause

Plaintiffs to suffer irreparable harm in the form of loss of business, revenue and customer

goodwill.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 30 of 46**

87.     Defendants' misappropriation of Plaintiffs' Trade Secrets, including Customer Information, was willful and malicious, entitling Plaintiffs to exemplary damages under NMSA 1978 § 57-3A-4 (1989).

88.     Accordingly, Plaintiffs are entitled to actual damages, exemplary damages, attorneys' fees, and injunctive relief under NMSA 1978 §§ 57-3A-3, 57-3A-4, 57-3A-5.

WHEREFORE, based on Defendants' violation of the Uniform Trade Secrets Act, Plaintiffs respectfully request that they be awarded the following relief against Defendants, jointly and severally:

(a)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them from retaining, using, or disclosing to any person, directly or indirectly, in any form, any of Plaintiffs' Trade Secrets or other confidential information, and require Defendants to i) return all Trade Secrets, including all copies, summaries, and compilations thereof; and ii) certify that all information or data related to the Trade Secrets in Defendants' possession has been permanently deleted and removed from any and all electronic accounts, external devices, laptops, email accounts, data storage centers and the like in the possession, custody or control of Defendants or any of them;

(b)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them from conducting business

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**
**Page 31 of 46**

with and/or retaining as clients any customers obtained through the improper use of any of

Plaintiffs' Trade Secrets or other confidential information;

      (c)     Compensatory damages in an amount to be determined at trial;

      (d)     Reasonable attorneys' fees incurred in this action;

      (e)     Exemplary damages in an amount to be determined at trial;

      (f)     Prejudgment interest;

      (g)     Post-judgment interest; and

      (h)     Such other and further relief as the Court deems just and proper.

**COUNT IV**
**<u>Unfair Trade Practices</u>**
**(Against all Defendants)**

89.     Plaintiffs reallege and incorporate by reference the allegations set forth above in

paragraphs 1 through 88, as if fully set forth below.

90.     The New Mexico Unfair Trade Practices Act, Section 57-12-1, *et seq*., prohibits

any person or corporation from making any false or misleading statement in connection with the

sale of goods or services which deceives or misleads any person.

91.     By advertising and promoting SFA's services using a name that is substantially

similar to that of FSFA, as well as prominently featuring the Former Executives' images and

names on SFA's promotional materials, Defendants have knowingly made, and continue to

knowingly make, false representations in connection with SFA's services.

92.     Furthermore, through SFA's electronic and verbal communications with its

customers and potential customers, including misrepresentations contained on its website and

false statements to the effect that FSFA is going out of business.  SFA has made misleading statements concerning its business operations and goodwill that, in fact, relate to Plaintiffs' business operations and goodwill.

93.     Upon information and belief, Defendants' have acted with intent to mislead and/or deceive Plaintiffs' customers and potential customers and have, in fact misled and deceived customers.

94.     As a direct and proximate result of Defendants' actions described above, Plaintiffs have been injured and damaged in an amount to be determined at trial.

95.     Defendants' actions have caused and will continue to cause irreparable injury to Plaintiffs as to which there exists no adequate remedy at law.

96.     The foregoing acts have been and continue to be knowing, deliberate, willful and wanton and in utter disregard for Plaintiffs' rights.

WHEREFORE, based on Defendants' violation of the New Mexico Unfair Trade Practices Act, Plaintiffs respectfully request that they be awarded the following relief against Defendants, jointly and severally:

(a)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them from engaging in any other act intended or likely to cause confusion or mistake in the minds of the trade or the public or to deceive consumers into mistakenly believing that Defendants' services are FSFA's services, or that Defendants' services are related to, affiliated with, sponsored by, or approved by Plaintiffs

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 33 of 46**

or are from the same sources as FSFA's services, or to otherwise misrepresent the nature, characteristics, qualities or origins of Defendants' services;

(b)     Temporary, preliminary, and permanent injunctive relief enjoining Defendants and their officers, agents, heirs, servants, employees, successors and assigns, and those persons in active concert, participation, or privity with them, or any of them from conducting business with and/or retaining as clients any customers obtained through their unlawful conduct complained of herein;

(c)     An accounting be conducted and judgment entered against Defendants for:

(1)     All profits received by Defendants as a result of Defendants' acts of unfair trade practices;

(2)     All damages sustained by Plaintiffs on account of, *inter alia*, Defendants' unfair trade practices;

(3)     Actual compensatory damages in an amount not presently known, but to be computed during the pendency of this action;

(d)     Monetary damages to be used for corrective advertising by Plaintiffs;

(e)     Reasonable attorneys' fees incurred in this action;

(f)     Prejudgment interest;

(g)     Post-judgment interest; and

(h)     Such other and further relief as the Court deems just and proper.

## COUNT V
## Breach of Contract
### (Against each of the Former Executives)

97.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 96, as if fully set forth below.

98.     Kantor entered into an enforceable Non-Competition Agreement on or about August 24, 2010, and an enforceable Confidentiality Agreement on or about September 12, 2010, each of which inure to the benefit of each Plaintiff in exchange for continuing and uninterrupted employment.

99.     Marion entered into an enforceable Confidentiality Agreement that inures to the benefit of each Plaintiff on or about June 13, 2011.

100.    Alley entered into an enforceable Confidentiality Agreement that inures to the benefit of each Plaintiff on or about May 5, 2008.

101.    Plaintiffs have performed all obligations to be performed on their part under the Non-Competition Agreement and Confidentiality Agreement.

102.    Kantor has breached the Confidentiality and the Non-Competition Agreement by using, for his benefit and for the benefit of SFA, Plaintiffs' Trade Secrets, in direct violation of the Non-Competition Agreement.

103.    Kantor has also breached the Non-Competition Agreement by soliciting and contracting with Plaintiffs' current and potential customers and current and former employees within 24 months after the termination of his employment, in direct violation of the Non-Competition Agreement.

104.    Kantor has further breached the Non-Competition Agreement by opening and working for a competing business within one hundred miles of Plaintiffs' office and within one year after the termination of Kantor's employment, in direct violation of the Non-Competition Agreement.

105.    Kantor's breach of the Non-Competition Agreement and the Confidentiality Agreement will inevitably give SFA an unfair competitive advantage by transferring Plaintiffs' Trade Secrets, certain customers, and certain former employees to SFA, and has caused or will cause Plaintiffs to suffer irreparable harm.

106.    Marion and Alley have breached the Confidentiality Agreement by copying, taking, revealing and using Plaintiffs' Trade Secrets, which constitute Confidential Information as defined therein.

107.    Marion and Alley's breaches will inevitably give SFA an unfair competitive advantage in competing with Plaintiffs, and such conduct has caused or will cause Plaintiffs to suffer irreparable harm.

108.    Plaintiffs are entitled to damages resulting from the Former Executives' breaches, including but not limited to, liquidated damages against Kantor as provided by the Non-Competition Agreement.

WHEREFORE, based on the Former Executives' breach of contract, Plaintiffs respectfully request that they be awarded the following relief against Defendants Kantor, Marion and Alley, individually:

(a)     Permanently restraining and enjoining Defendant Kantor from violating his contractual obligations to Plaintiffs under the Non-Competition Agreement;

(b)     Permanently restraining and enjoining the Former Executives from violating their contractual obligations to Plaintiffs under the Confidentiality Agreement;

(c)     Permanently restraining the Former Executives from using, relying upon, or providing to SFA or any third party, Plaintiffs' Trade Secrets;

(d)     Permanently restraining and enjoining the Former Executives from misappropriating Plaintiffs' Trade Secrets;

(e)     Permanently restraining and enjoining Defendants from conducting business with and/or retaining as clients any customers obtained through the unlawful conduct complained of herein;

(f)     Permanently restraining and enjoining the Former Executives from returning to or being on Plaintiffs' premises and from intimidating and/or soliciting Plaintiffs' employees;

(g)     Compensatory damages in an amount to be determined at trial;

(h)     Liquidated damages against Kantor in accordance with the terms of the Non-Competition Agreement;

(i)     Reasonable attorneys' fees incurred in this action as provided by contract;

(j)     Prejudgment interest;

(k)     Post-judgment interest; and

(l)     Such other and further relief as the Court deems just and proper.

## COUNT VI
### Breach of Covenant of Good Faith and Fair Dealing
### (Against each of the Former Executives)

109.   Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 108, as if fully set forth below.

110.   The Non-Competition Agreement and the Confidentiality Agreement contained implied covenants of good faith and fair dealing.

111.   Plaintiffs have performed all obligations to be performed on their part under the Non-Competition Agreement and Confidentiality Agreement, and have dealt with the Former Executives fairly and in good faith.

112.   Kantor has breached the implied covenant of good faith and fair dealing contained in the Non-Competition Agreement and the Confidentiality Agreement by engaging in the misconduct detailed herein.

113.   Marion and Alley have breached the implied covenant of good faith and fair dealing contained in the Confidentiality Agreement by engaging in the misconduct detailed herein.

114.   The Former Executives'  breaches of the implied covenants contained in the Non-Competition Agreement and Confidentiality Agreement will inevitably give SFA an unfair competitive advantage by, among other things, transferring Plaintiffs' Trade Secrets, certain customers, and certain former employees to SFA, and such breaches have caused or will cause Plaintiffs to suffer irreparable harm.

115.     Plaintiffs are entitled to damages resulting from the Former Executives' breaches of the covenants of good faith and fair dealing implied in their respective Agreements, including but not limited to, liquidated damages against Kantor as provided by the Non-Competition Agreement.

WHEREFORE, based on the Former Executives' breach of the covenants of good faith and fair dealing implied in their respective Agreements, Plaintiffs respectfully request that they be awarded the following relief against Defendants Kantor, Marion and Alley, individually:

(a)     Permanently restraining and enjoining Defendant Kantor from breaching the covenants of good faith and fair dealing implied in the Non-Competition Agreement;

(b)     Permanently restraining and enjoining the Former Executives from breaching the covenants of good faith and fair dealing implied in the Confidentiality Agreement;

(c)     Permanently restraining the Former Executives from using, relying upon, or providing to SFA or any third party, Plaintiffs' Trade Secrets;

(d)     Permanently restraining and enjoining the Former Executives from misappropriating Plaintiffs' Trade Secrets;

(e)     Permanently restraining and enjoining Defendants from conducting business with and/or retaining as clients any customers obtained through the unlawful conduct complained of herein;

(f)     Permanently restraining and enjoining the Former Executives from returning to or being on Plaintiffs' premises and from intimidating and/or soliciting Plaintiffs' employees;

(g)     Compensatory damages in an amount to be determined at trial;

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 39 of 46**

(h)    Liquidated damages against Kantor in accordance with the terms of the Non-Competition Agreement;

(i)    Reasonable attorneys' fees incurred in this action as provided by contract;

(j)    Prejudgment interest;

(k)    Post-judgment interest; and

(l)    Such other and further relief as the Court deems just and proper.

### COUNT VII
### Breach of Fiduciary Duty
### (Against each of the Former Executives)

116.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 115, as if fully set forth below.

117.    By virtue of their executive-level management positions with Plaintiffs and their roles as Managing Directors of FSFA, the Former Executives were in a position of trust with Plaintiffs.  By accepting these high-level positions, the Former Executives also accepted and acquiesced in such trust.

118.    The Former Executives accepted and acquiesced in such trust by agreeing to the Non-Competition Agreement and/or Confidentiality Agreements.

119.    The Former Executives breached their fiduciary duties to Plaintiffs by utilizing Plaintiffs' time and resources to set up a business in direct competition with FSFA, as well as by opening a competing business and directly soliciting Plaintiffs' existing customers and employees, all using Plaintiffs' goodwill and Trade Secrets.

120.    Furthermore, Kantor breached his fiduciary duties to Plaintiffs by engaging in conduct expressly prohibited by the Non-Competition Agreement and the Confidentiality Agreement.

121.    Likewise, Marion and Alley breached their fiduciary duties to Plaintiffs by engaging in conduct expressly prohibited by the Confidentiality Agreement.

122.    The Former Executives' actions have caused and will continue to cause Plaintiffs to suffer immediate and irreparable harm if they are permitted to continue operating SFA in unfair competition with Plaintiffs, soliciting Plaintiffs' current and potential customers and relying upon Plaintiffs' Trade Secrets.

123.    Plaintiffs are entitled to damages resulting from the Former Executives' breach of their fiduciary duties to Plaintiffs in an amount to be determined at trial.

124.    The actions of the Former Executives were intentional, malicious, willful, reckless, wanton, fraudulent, and/or done in bad faith.  As a result, Plaintiffs are entitled to punitive damages against the Former Executives.

WHEREFORE, based on Defendant Alley, Kantor and Marion's breach of fiduciary duties, Plaintiffs respectfully request that they be awarded the following relief against Defendants Alley, Kantor and Marion, individually:

(a)    Permanently restraining and enjoining Defendant Kantor from violating his contractual obligations to Plaintiffs under the Non-Competition Agreement;

(b)    Permanently restraining and enjoining the Former Executives from violating their contractual obligations to Plaintiffs under the Confidentiality Agreement;

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**
**Page 41 of 46**

(c)     Permanently restraining the Former Executives from using, relying upon, or providing to SFA or any third party, Plaintiffs' Trade Secrets;

(d)     Permanently restraining and enjoining the Former Executives from misappropriating Plaintiffs' Trade Secrets;

(e)     Permanently restraining and enjoining Defendants from conducting business with and/or retaining as clients any customers obtained through the unlawful conduct complained of herein;

(f)     Permanently restraining and enjoining the Former Executives from returning to or being on the premises of FSFA and from intimidating and/or soliciting Plaintiffs' employees;

(g)     Compensatory damages in an amount to be determined at trial;

(h)     Punitive damages in an amount to be determined at trial;

(i)     Prejudgment interest;

(j)     Post-judgment interest; and

(k)     Such other and further relief as the Court deems just and proper.

## COUNT VIII
### Breach of Duty of Loyalty
### (Against each of the Former Executives)

125.    Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1 through 124, as if fully set forth below.

126.    By virtue of their executive-level management positions with Plaintiffs and their roles as Managing Directors of FSFA, the Former Executives owed Plaintiffs a duty of loyalty.

127.    The Former Executives breached their duty of loyalty by conspiring and engaging in concerted efforts to prepare to compete with Plaintiffs while still employed by Plaintiffs. Upon information and belief, these efforts began at least as far back as October 2013 – nearly six months prior to the termination of their employment with Plaintiffs.

128.    The Former Executives did not act in Plaintiffs' best interests when they registered or caused the registration of SFA with the New Mexico Office of the Secretary of State on or about October 21, 2013 and transferred their loyalty to that entity.

129.    Likewise, the Former Executives did not act in Plaintiffs' best interests when they registered or caused the registration of the domain name "santafeadvisorsllc.com" and commenced designing a website for SFA on or about October 15, 2013, and transferred their loyalty to that entity.

130.    Beginning in the same time frame, the Former Executives curtailed their efforts to solicit new customers for Plaintiffs, either to harm Plaintiffs or to preserve these opportunities for SFA, or both.  This was in direct breach of their duty of loyalty to Plaintiffs.

131.    The Former Executives further failed to act in Plaintiffs' best interests by continuing to work for Plaintiffs, collecting full compensation (including incentive compensation) but doing a substandard job and devoting to SFA their time and attention that should have been devoted to Plaintiffs, knowing they intended to form and work for a direct competitor in the very near future.

132.    Such actions inevitably have and will continue to damage the business and goodwill of Plaintiffs.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1 to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 43 of 46**

133.     As a proximate result of the actions of the Former Executives, Plaintiffs have

suffered and will continue to suffer damages in an amount to be proven at trial as a result of its

loss of business goodwill.

134.     Plaintiffs are entitled to damages resulting from the Former Executives' breach of

their duty of loyalty to Plaintiffs in an amount to be determined at trial.

135.     The actions of the Former Executives were intentional, malicious, willful,

reckless, wanton, fraudulent, and/or done in bad faith.  As a result, Plaintiffs are entitled to

punitive damages against Defendants Alley, Kantor and Marion.

WHEREFORE, based on Defendant Alley, Kantor and Marion's breach of duty of

loyalty, Plaintiffs respectfully request that they be awarded the following relief against

Defendants Alley, Kantor and Marion, individually:

(a)     Compensatory damages in an amount to be determined at trial;

(b)     Punitive damages in an amount to be determined at trial;

(c)     Prejudgment interest;

(d)     Post-judgment interest; and

(e)     Such other and further relief as the Court deems just and proper.

## COUNT IX
## <u>Unjust Enrichment</u>
## (Against all Defendants)

136.     Plaintiffs reallege and incorporate by reference the allegations set forth above in

paragraphs 1 through 135, as if fully set forth below.

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq*.), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT
Page 44 of 46**

137.    Defendants knowingly have benefited from their use of the Infringing Marks and the names "Santa Fe Advisors LLC" and/or "Santa Fe Advisors, LLC," and their exploitation of the Former Executives' roles as executive employees of Plaintiffs.  Defendants further have knowingly benefited from their theft and misuse of Plaintiffs' Trade Secrets.  Plaintiffs are informed and believe that Defendants have obtained employees and clients and have entered into relationships with prospective clients through their wrongful conduct, and have received monetary and other benefits as a result thereof.

138.    Defendants have retained the benefits of their wrongful conduct, all of which is in in violation of Plaintiffs' rights and all of which causes damages to Plaintiffs, as set forth above.

139.    Under the circumstances set forth above, it would be unjust for Defendants to retain the benefits conferred upon them by their use of Plaintiffs' name, goodwill and Trade Secrets without payment to Plaintiffs.

WHEREFORE, based on Defendants' unjust enrichment from its unlawful conduct, Plaintiffs request that they be awarded the following relief against Defendants, jointly and severally:

(a)    That an accounting be conducted and judgment entered against Defendants for:

(1)    All profits received by Defendants as a result of their acts of unfair infringement/unfair competition;

(2)    All damages sustained by Plaintiffs on account of, *inter alia*, Defendants' trademark infringement and unfair competition; and

(3)     Actual compensatory damages in an amount not presently known, but to

be computed during the pendency of this action;

(b)     Punitive damages in an amount to be determined at trial;

(c)     Prejudgment interest;

(d)     Post-judgment interest; and

(e)     Such other and further relief as the Court deems just and proper.

Dated:  April 25, 2014.

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

By_____ /s/Eric R. Burris_____
    Eric R. Burris
    201 Third Street NW, Suite 1700
    Albuquerque, NM 87102
    Telephone:  (505) 244-0770
    Facsimile:  (505) 244-9266

*Attorneys for Plaintiffs*
*First National Bancorp Incorporated,*
*First National Bank of Santa Fe and*
*First Santa Fe Advisors, LLC*

017054\0003\11189890.5

**VERIFIED COMPLAINT FOR UNFAIR COMPETITION (15 U.S.C. § 1125(a)), COMMON LAW
TRADEMARK INFRINGEMENT, MISAPPROPRIATION OF TRADE SECRETS (NMSA 1978 §§ 57-3A-1
to 7), UNFAIR TRADE PRACTICES (NMSA 1978 § 57-12-1, *et seq.*), BREACH OF CONTRACT, BREACH
OF THE COVENANT OF GOOD FAITH AND FAIR DEALING, BREACH OF FIDUCIARY DUTY,
BREACH OF THE DUTY OF LOYALTY AND UNJUST ENRICHMENT**

## **VERIFICATION**

STATE OF NEW MEXICO      )
                                       ) ss.

COUNTY OF BERNALILLO     )

I, Jennifer Fulton Anderson, having been first duly sworn under oath, depose and state that I have read the foregoing Verified Complaint and that the same is true and correct to the best of my knowledge, information and belief.

FIRST NATIONAL BANK OF SANTA FE

By: _____
      Jennifer Fulton Anderson
      Executive Director, Strategic Planning

SIGNED AND SWORN to before me on April 25, 2014, by Jennifer Fulton Anderson.

_____
Notary Public

My commission expires:

3/21/2016

OFFICIAL SEAL
Jennifer Baca
NOTARY PUBLIC
STATE OF NEW MEXICO
My Commission Expires: 3/21/2016